IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:19-cr-442-ECM-JTA |
| DERRICK DEMOND JOHNSON | ) | (WO) |
| | ) | |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

This cause is before the court on Defendant Derrick Demond Johnson's motion to suppress (Doc. No. 17) and the government's response in opposition thereto (Doc. No. 23). The court held an evidentiary hearing on the motion on January 10, 2020. (Doc. No. 31.) After due consideration of the parties' arguments, witness's testimony and applicable law, the court concludes that the motion to suppress is due to be denied.

## I.  PROCEDURAL HISTORY

Defendant Derrick Demond Johnson ("Johnson") is charged with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1), possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a controlled substance crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Doc. No. 1.)  Johnson moved to suppress the firearm and marijuana that were discovered on his person by law enforcement on May 15, 2019 during a warrantless search. (Doc. No. 17.)  The United States responded to the motion asserting that the stop and search of Johnson was lawful.  (Doc. No. 23.)  This matter is ripe for disposition.

## II. FINDINGS OF FACT

The evidence adduced at the evidentiary hearing establishes that around 3:00 p.m. on May 15, 2019, State Trooper Hunter Odom ("Trooper Odom") of the Alabama Law Enforcement Agency was patrolling alone in his marked vehicle on Kolb City Road in Butler County when he stopped Johnson. The government presented Trooper Odom as its sole witness at the evidentiary hearing (Doc. No. 31, Hr'g Tr. 6-38) and defense counsel admitted Trooper Odom's body camera recording from the stop into evidence (Def. Ex. 2). According to Trooper Odom, the stop occurred in a rural area known to law enforcement for illegal narcotics and illegal activity.

Trooper Odom was traveling eastbound on Kolb City Road when he noticed a red sedan traveling westbound that had no license tag displayed.[1] Trooper Odom immediately activated his vehicle lights and turned his patrol vehicle around. Trooper Odom, now traveling westbound on Kolb City Road in pursuit of the red sedan, observed a man walking eastbound in the middle of Kolb City Road. This man was not in the roadway earlier when Trooper Odom was traveling eastbound. Trooper Odom suspected that the man, later identified as Johnson, had been a passenger in the red sedan but did not observe Johnson exit the sedan.[2] When Johnson saw Trooper Odom's patrol vehicle, he moved from the

---

[1] The court notes that Alabama law requires a plainly visible tag. *See* Ala. Code § 32-6-51 (1975) ("Every motor vehicle operator who operates a motor vehicle upon any city street or other public highway of or in this state shall at all times keep attached and plainly visible on the rear end of such motor vehicle a license tag or license plate as prescribed and furnished by the Department of Revenue at the time the owner or operator purchases his license.")

[2] Johnson later informed Trooper Odom that he had exited the red sedan. (Doc. No. 31, Hr'g Tr. 34:5, 35:24.)

middle of the road and began walking down the side of the road. Trooper Odom pulled alongside Johnson with his front passenger window open and stopped his patrol vehicle. Johnson approached Trooper Odom's front passenger window and Trooper Odom began asking him questions concerning walking in the roadway. As Trooper Odom questioned Johnson, he smelled a strong scent of marijuana emanating from Johnson.[3] Johnson did not respond to Trooper Odom's questions.[4] Trooper Odom observed Johnson moving around and reaching toward his back. Trooper Odom then activated his body camera, exited his patrol vehicle, and approached Johnson.

Trooper Odom walked around the front of his patrol vehicle to the front passenger side where Johnson stood in the grass holding out his wallet with both hands. Trooper Odom testified that Johnson was acting "pretty nervous and fidgety." Trooper Odom immediately instructed Johnson to place his hands on the hood of the patrol vehicle. Trooper Odom conducted a pat down search, detected a firearm in Johnson's pants, and advised Johnson that he was not under arrest but being handcuffed for "our" safety.[5] Trooper Odom then handcuffed Johnson. Johnson inquired, "What did I do?" Trooper Odom responded that he would explain in a moment. Trooper Odom then walked Johnson toward the back passenger door of his patrol vehicle and informed Johnson that he smelled

---

[3] Trooper Odom testified that his interaction with Johnson prior to exiting his patrol vehicle lasted "[j]ust a few seconds." (Doc. No. 31, Hr'g Tr. 23:14, 24:20, 25:2.)

[4] (*See* Doc. No. 31, Hr'g Tr. 26:8-9, 27:7.)

[5] On the body camera video, Trooper Odom stated that he was handcuffing Johnson for "our safety." (Doc. No. 31, Hr'g Tr. 25:24.) At the evidentiary hearing, Trooper Odom testified that he placed Johnson in handcuffs for "my safety and his safety . . . to detain him." (Doc. No. 31, Hr'g Tr. 8:16.)

3

marijuana on Johnson. Johnson admitted to Trooper Odom that he had smoked marijuana. Trooper Odom advised Johnson that he was going to remove the firearm from Johnson's pocket and directed him not to move. Johnson responded that he would remove the firearm and began moving his hands to do so while handcuffed. Trooper Odom ordered Johnson not to touch the firearm. Trooper Odom then commanded Johnson to stay still and proceeded to contact local law enforcement for assistance. While Trooper Odom contacted local law enforcement, Johnson made a remark about the situation "being crazy" and directed Trooper Odom to get his cigarettes out of his pants' pocket. Trooper Odom responded that he would help Johnson in a second. Johnson moved his hands and attempted to remove something from his pocket. Trooper Odom advised Johnson that he would retrieve the cigarettes but first must remove the firearm from the front of Johnson's pants. Trooper Odom then removed the firearm, a .380 Cobra pistol, from Johnson's pants while asking Johnson about his intended destination. Johnson replied "down there." Trooper Odom took possession of the firearm and secured it in his patrol vehicle. Meanwhile, Johnson commented again about retrieving the cigarettes from his pocket and retrieved the package of cigarettes. Trooper Odom removed the package of cigarettes from Johnson's hands and placed a cigarette in Johnson's mouth. While doing so, Trooper Odom asked Johnson if he had "anything on him" that Trooper Odom "need[ed] to know about" and Johnson responded negatively. Trooper Odom commented that he would retrieve Johnson's cigarette lighter as Johnson again moved his hands in his pocket. As evidenced on Trooper Odom's body camera, Trooper Odom observed a cigarette lighter and a mass of plastic coming from Johnson's pocket while Johnson was moving his hands

4

in his pocket. Trooper Odom grabbed the cigarette lighter from Johnson's hand and directed him to release the other items he was holding in his pocket. Trooper Odom then lit Johnson's cigarette with the cigarette lighter and removed the plastic bag from Johnson's pocket. The plastic bag, when retrieved by Trooper Odom, appeared to contain several clear bags of suspected marijuana. Trooper Odom placed the plastic bags on the front passenger seat of his patrol vehicle and asked Johnson if he was "selling" to the occupants of the red sedan. Johnson replied that he knew the driver of the sedan and questioned whether it was a "set up." While Trooper Odom conducted a search of Johnson's person, where he found another plastic bag containing individual bags of suspected marijuana, Johnson asked him why he turned his vehicle around and Trooper Odom replied that he did so because the red sedan did not have a license tag displayed. Trooper Odom completed his search of Johnson's person which yielded twenty-two individual bags of marijuana. Johnson admitted to Trooper Odom that he was a convicted felon.

## III. DISCUSSION

A. <u>Johnson's Motion to Suppress</u>

Johnson challenges the warrantless stop[6] and the resulting search arguing that Trooper Odom lacked an articulable reasonable suspicion to stop him as required under *Terry v. Ohio*, 392 U.S. 1 (1968). (Doc. No. 17.) Johnson asserts that any incriminating statements he made and any physical evidence seized should be excluded as the "fruit of the poisonous tree." (Doc. No. 17 at 3; Doc. No. 31, Hr'g Tr. 50:12-18.) The government

---

[6] Johnson clarified at the hearing that he was only challenging the stop as being unlawful. (Doc. No. 31, Hr'g Tr. 50:3-22.)

5

responds that Johnson's motion is due to fail because Trooper Odom had a reasonable suspicion to believe that Johnson had committed a violation of Alabama law so the investigatory stop of Johnson was permissible under the Fourth Amendment. (Doc. No. 23 at 2.) The government also argues that the smell of marijuana gave Trooper Odom grounds to proceed with a stop and search under *Terry*. (*Id*. at 3-4.) Finally, the government argues that the pat down search was proper based on the totality of the circumstances. (*Id.* at 5.)

B. <u>Governing Legal Principles</u>

The law is well-settled. "The Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Whren v. United States*, 517 U.S. 806, 809 (1996). The Eleventh Circuit has explained that there are three types of encounters between police and citizens "for purposes of . . . Fourth Amendment analysis: (1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests." *United States v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006) (citation omitted). In regard to the first type of encounter, "[c]onsensual encounters between police officers and citizens do not trigger Fourth Amendment safeguards." *United States v. Santibanez Garcia*, 132 F. Supp. 2d 1338, 1341 (M.D. Fla. 2000) (footnote omitted).

> Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen. Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage – provided they do not induce cooperation by coercive means.

6

*Perez,* 443 F.3d at 777 (citing *United States v. Drayton*, 536 U.S. 194, 200-01 (2002)). *See also Florida v. Bostick*, 501 U.S. 429, 434 (1991) ("[M]ere police questioning does not constitute a seizure.").

For the purposes of Fourth Amendment analysis, a seizure occurs "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). "The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." *United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980) (quotations and citation omitted). "If a reasonable person would feel free to terminate the encounter, then he or she has not been seized." *Miller v. Harget*, 458 F.3d 1251, 1257 (11th Cir. 2006) (citation omitted).

> . . . [A] person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. . . . In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

*Mendenhall*, 446 U.S. at 554-55 (internal citations omitted).

Once the encounter rises to the level of a brief seizure or investigatory detention, the officer must have a reasonable, articulable suspicion that the individual has engaged in

7

or is about to engage in criminal activity. *Terry*, 392 U.S. at 21; *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990) ("[E]ven in the absence of probable cause, police may stop persons and detain them briefly in order to investigate a reasonable suspicion that such persons are involved in criminal activity."). "A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000). Reasonable suspicion is determined from the totality of the circumstances, *United States v. Sokolow*, 490 U.S. 1, 8 (1989), and requires that the officer point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the investigative stop. *Terry*, 392 U.S. at 21; *see also United States v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir. 1999). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007); *see also United States v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004). For a seizure to be valid, it must be "justified at its inception." *May v. City of Nahunta, Ga.*, 846 F.3d 1320, 1328 (11th Cir. 2017) (quoting *Terry*, 392 U.S. at 20). To determine the lawfulness of an officer's actions, the court considers only those "facts available to the officer at the moment of the seizure." *United States v. Mestre*, 362 F. Supp. 3d 1175, 1178 (M.D. Ala. 2019) (quoting *Terry*, 392 U.S. at 21-22).

C. Analysis of Johnson's Motion to Suppress

In the present case, Johnson argues that the stop was unlawful at its inception because there was no reason to stop or detain him. The government seeks to justify the stop and seizure of Johnson by arguing that Trooper Odom observed Johnson violating Alabama traffic law. Specifically, the government contends that Trooper Odom observed Johnson walking in the middle of Kolb City Road in violation of Ala. Code § 32-5A-215(c) (1975).[7] Despite Johnson's contention, the court finds the facts sufficient to support his initial stop and the subsequent search.

1. Trooper Odom had reasonable suspicion to stop Johnson.

A traffic stop is a "seizure" within the meaning of the Fourth Amendment. *Whren*, 517 U.S. at 809-10.

> To comply with the Fourth Amendment, the officer must have reasonable suspicion. *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) ("All parties agree that to justify [a traffic stop], officers need only reasonable suspicion[.]" (quotation omitted)). That is, the officer must have "a particularized and objective basis for suspecting the person stopped of criminal activity." *Navarette v. California*, 572 U.S. 393, 396, 134 S. Ct. 1683, 1687, 188 L. Ed. 2d 680 (2014). Criminal activity includes even minor traffic violations. *See United States v. Chanthasouxat*, 342 F.3d 1271, 1277 (11th Cir. 2003).

*United States v. Campbell*, 912 F.3d 1340, 1349 (11th Cir.), *cert. denied*, 140 S. Ct. 196, 205 L. Ed. 2d 100 (2019), *reh'g denied*, 140 S. Ct. 633, 205 L. Ed. 2d 412 (2019). The

---

[7] Ala. Code § 32-5A-215(c) is part of the "Alabama Rules of the Road Act." *See* Ala. Code § 32-5A-1 (1975). Section 32-5A-215 is entitled <u>Pedestrians on roadways</u> and subsection (c) provides "[w]here neither a sidewalk nor a shoulder is available any pedestrian walking along and upon a highway shall walk as near as practicable to an outside edge of the roadway, and if on a two-way roadway, shall walk only on the left side of the roadway." Ala. Code § 32-5A-215(c) (1975).

existence of reasonable suspicion is viewed from the standpoint of an objectively reasonable police officer. *Chanthasouxat*, 342 F.3d at 1276.

The record reflects that Trooper Odom stopped Johnson after he personally observed Johnson walking in the middle of Kolb City Road. Indeed, Trooper Odom repeatedly gave credible testimony that Johnson was "walking in the middle" of the roadway. (Doc. No. 31, Hr'g Tr. 7:13-15, 11:19-23, 12:18-20, 20:15, 21:3-4, 36:22-23.) As noted above, Ala. Code § 32-5A-215(c) (1975) states, *inter alia*, that "[w]here neither a sidewalk nor a shoulder is available any pedestrian walking along and upon a highway shall walk as near as practicable to an outside edge of the roadway, and if on a two-way roadway, shall walk only on the left side of the roadway."[8] Trooper Odom's testimony and the body camera video demonstrate that Kolb City Road is a two-way rural road with no sidewalk or shoulder for pedestrian traffic. (Doc. No. 31, H'rg Tr. 23:22-25, 24:1-5.) There is no video evidence of Johnson walking in the middle of the roadway. However, in light of Trooper Odom's testimony regarding his eyewitness observations – and the fact that Johnson offered no evidence to negate Trooper Odom's testimony – this court concludes that Trooper Odom had a reasonable, articulable suspicion that Johnson was violating Ala. Code § 32-5A-215(c). From the standpoint of an objectively reasonable police officer, there existed reasonable suspicion to believe Johnson was committing a

---

[8] The Alabama legislature ensured obedience to state traffic laws by motorists and pedestrians through enacting § 32-5A-3 which provides "it is unlawful and, unless otherwise declared in this chapter with respect to particular offenses, it is a misdemeanor for any person to do any act forbidden or fail to perform any act required in this chapter." Ala. Code § 32-5A-3 (1975). *See also* Ala. Code § 32-5A-8(b) (1975) (providing for fine of not more than $100.00 or imprisonment of not more than 10 days for first misdemeanor conviction under Chapter 32.)

traffic violation by walking in the middle of the roadway. *See United States v. Schuett*, No. 11-20574-BC, 2012 WL 3109394, at *7-8 (E.D. Mich. July 31, 2012) (denying motion to suppress because police officers had probable cause to initiate stop of defendant after observing him walk down the center of a sidewalk-lined street in violation of Michigan traffic law); *United States v. Chambers*, No. 13-CR-20684, 2014 WL 3900585, at *3 (E.D. Mich. Aug. 11, 2014) (finding troopers had probable cause to stop defendant for committing civil infraction of walking in the center of the street); *United States v. Heard*, No. 15-84-JJB-RLB, 2015 WL 7185494, at *2 (M.D. La. Nov. 13, 2015) (holding that police officer's observation of defendant walking in the middle of the road violated city code prohibiting pedestrians on roadways and was sufficient to establish reasonable suspicion that defendant had committed a crime); *United States v. Birmingham*, No. 13-CR-0237-CVE, 2014 WL 580138, at * 4 (N.D. Okla. Feb. 12, 2014) (finding that officer's testimony that defendant was walking in the middle of the road established reasonable suspicion to believe that defendant had committed a violation of a municipal law). Accordingly, the traffic stop was constitutionally justified at its inception.

Johnson argued at the hearing that the use of Ala. Code § 32-5A-215(c) by Trooper Odom was merely a belated attempt to support his decision to stop a person whom he suspected of being in the red sedan under pursuit. (Doc. No. 31, Hr'g Tr. 46-47.) The court is not persuaded by Johnson's argument that the traffic stop was pretextual and thus violated the Fourth Amendment. Pretext is not a defense as the Supreme Court has held that the "constitutional reasonableness of traffic stops [does not] depend [ ] on the actual motivations of the individual officers involved." *Whren*, 517 U.S. at 813. When

determining whether an officer had reasonable suspicion to believe that a traffic violation occurred, the "officer's motive in making the traffic stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment." *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999) (quotation omitted). Given that the court has already determined that reasonable suspicion existed for the traffic stop and because the law is clear that the subjective intent of the officer is irrelevant in determining whether the traffic stop was constitutionally permissible, the court finds no Fourth Amendment violation.

      2. Trooper Odom had probable cause to search Johnson.

The court is likewise unpersuaded by Johnson's challenge to the search of his person by Trooper Odom. It is well-established that the odor of marijuana detected by Trooper Odom provided probable cause for the search of Johnson's person. *See United States v. Johnson*, 445 F. App'x 311, 313 (11th Cir. 2011) ("Our case law establishes that if a police officer detects the odor of marijuana, this gives rise to probable cause supporting a warrantless search.") (citations omitted); *United States v. Garza*, 539 F.2d 381, 382 (5th Cir. 1976) ("The odor of marijuana emanating from the vehicle gave the officer probable cause to conduct the search.").[9] Because Trooper Odom provided credible testimony that he smelled marijuana when he spoke to Johnson through the window of his patrol vehicle

---

[9] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

at the outset of the traffic stop,[10] the court finds probable cause existed to search Johnson's person.[11]

In light of the foregoing, the court finds that Trooper Odom's actions related to Johnson during this encounter were within the parameters of the Fourth Amendment and suppression of the physical evidence and incriminating statements is not warranted.

## IV. CONCLUSION

Pursuant to the foregoing findings and conclusions, it is the RECOMMENDATION of the Magistrate Judge that Defendant's Motion to Suppress (Doc. No. 17) be DENIED.

It is further ORDERED that the parties shall file any objections to the said Recommendation not later than **April 24, 2020.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the

---

[10] (*See* Doc. No. 31, Hr'g Tr. 8:2-5, 12:21-22, 15:8-23, 37:6-7.)

[11] The court finds no need to divorce the pat down search from the complete search of Johnson's person inasmuch as probable cause to search Johnson existed before the pat down search was conducted due to the smell of marijuana emanating from his person.

13

District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 9th day of April, 2020.

/s/ Jerusha T. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE